**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 21-22-DLB-MAS**

**GREGORY RICARDO CHAPA**                                                                          **PLAINTIFF**

**v.**                                   **MEMORANDUM OPINION AND ORDER**

**KENTON COUNTY JUDGE EXECUTIVE, et al.**                                 **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

## I.    INTRODUCTION

This matter is before the Court upon a Motion to Dismiss for Lack of Prosecution filed by Defendants (Doc. # 39), and a Motion for Leave to Amend the Complaint filed by Plaintiff.  (Doc. # 42).  Plaintiff has filed a Response to Defendants' Motion (Doc. # 41), and the time for filing a Reply has passed without one being filed.  Defendants have not responded to Plaintiff's Motion, and the time for doing so has passed.  Accordingly, both motions are ripe for the Court's review.  For the reasons stated herein, Defendants' Motion to Dismiss (Doc. # 39) is **granted**, and Plaintiff's Motion for Leave to Amend (Doc. # 42) is **denied as moot**.  Additionally, pursuant to 42 U.S.C § 1997e(c)(1), the Court has reviewed Plaintiff's Complaint and determined that it fails to state a claim upon which relief can be granted.  This action is accordingly **dismissed with prejudice**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

When this action was filed in July 2020, Plaintiff Gregory Ricardo Chapa was incarcerated at the Kenton County Detention Center ("KCDC") in Covington, Kentucky. (Doc. # 1-1 at 8).  According to Mr. Chapa, "[n]ot even the minimum precautionary and

cautionary measures were taken in response to COV[ID]-19 infection or to prevent the spread of the virus" by KCDC and the county officials in charge of operating the jail. (*Id.* at 12). More specifically, Mr. Chapa alleges that the jail did not appropriately socially distance inmates (*id.*), that the jail did not provide an adequate amount of hand soap to inmates (*id.* at 13), that the jail did not have enough germicidal chemicals on hand (*id.* at 14), that the jail did not have enough uniforms and linens to change them often enough (*id.*), that the jail rationed toilet paper (*id.* at 15), and that the jail only provided him two hot meals per day, "which surely cannot meet . . . federal institutional standards." (*Id.*). Mr. Chapa believes these actions violated his Constitutional rights, and in July 2020, he filed a *pro se* lawsuit in Kenton Circuit Court against the Kenton County Judge Executive, the Kenton County Jailer, KCDC, Kenton County Fiscal Board members, and Southern Health Partners ("SHP"), the jail's contracted healthcare provider. (*See* Doc. # 1-1). Mr. Chapa's lawsuit seeks declaratory and injunctive relief with respect to the jail's COVID-19 policies and monetary damages of $100,000.[1] (*Id.*).

Defendants removed Mr. Chapa's lawsuit to this Court in February 2021. (Doc. # 1). In April 2021, the Court granted a Motion to Dismiss filed by SHP on procedural grounds, noting that Mr. Chapa had not responded to SHP's Motion and that he had

---

[1]     Mr. Chapa's claims for injunctive relief are now moot, considering the end of the COVID-19 pandemic. *See, e.g.*, Act of Apr. 10, 2023, Pub. L. No. 118-3, 137 Stat. 6 (a joint resolution enacted by Congress and signed by President Biden ending the COVID-19 national emergency).

        Additionally, despite later writing that he "DID NOT file this suit for monetary gain" (Doc. # 41 at 2) (emphasis in original), in a letter dated March 2023, Mr. Chapa has persisted to request from Defendants "a simple settlement [of] $5,000 [because he is] struggling with alcohol and drug addiction and trying to get [his] life together," and the monetary settlement would be "a start for [him] and [he] could and would use it to better [his] life." (Doc. # 43 at 2). The Court commends Mr. Chapa on attempting to better his life after incarceration, but seeking settlement money from a lawsuit is not an accordingly commendable means for doing so.

otherwise indicated withdrawal of his claims against SHP.  (Doc. # 16).  Shortly thereafter, Mr. Chapa moved to amend his complaint (Doc. # 19), and the parties filed proposed discovery schedules.  (Docs. # 21 and 22).  The presiding Magistrate Judge entered a Report and Recommendation recommending that Mr. Chapa's Motion for Leave to Amend be granted in part, insofar as it sought addition of Jailer Terry Carl individually, and denied in part, insofar as it sought addition of individual members of the Kenton County Fiscal Board.  (Doc. # 33).  The Court adopted the Report and Recommendation in full after no objections were filed by either party.  (Doc. # 36).

But Mr. Chapa never filed an Amended Complaint, and the Court entered a Scheduling Order in March 2022, directing that fact discovery should be completed by September 2, 2022, and that dispositive motions were due by January 13, 2023.  (Doc. # 37).  Mr. Chapa filed a Notice of Change of Address in May 2022, and then the case sat dormant for several months until Defendants filed the instant Motion to Dismiss in December 2022.  (Doc. # 39).  Mr. Chapa again filed a Notice of Change of Address a few weeks later (Doc. # 40), and he filed a Response to the Motion to Dismiss on the last day for doing so, December 30, 2022.  (Doc. # 41).

In January 2023, Mr. Chapa filed a second Motion for Leave to Amend his Complaint, again seeking to add Jailer Carl individually.  (Doc. # 42).  Mr. Chapa has also filed a letter addressed to defense counsel dated March 2023, in which he seeks discovery materials (Doc. # 43), and a final change of address (Doc. # 44), indicating that he was living in a rehabilitation facility at Saint Catharine, Kentucky, as of March 2023.  (Doc. # 44).  As of July 2023, no other filings have been made on the case's docket.

## III.   ANALYSIS

The Court having reviewed the record, including the pending motions, has concluded that Defendants' Motion to Dismiss (Doc. # 39) will be granted for Mr. Chapa's failure to adhere to the Court's deadlines and failure to prosecute his case in an efficient and meaningful manner.  As an alternative basis for dismissal, Mr. Chapa also fails to state a claim upon which relief can be granted, which warrants a *sua sponte* dismissal of his Complaint.  Lastly, Mr. Chapa's Motion for Leave to Amend (Doc. # 42) is duplicative and futile, and will thus be denied.  The Court will address each of these issues in turn.

### A.   Defendants' Motion to Dismiss (Doc. # 39)

Rule 41(b) of the Federal Rules of Civil Procedure provides that if a plaintiff "fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  The Sixth Circuit has provided four factors to guide a court's decision of whether to dismiss an action for failure to prosecute: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered."  *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999) (citing *Stough v. Mayville Comm. Sch.*, 138 F.3d 612, 615 (6th Cir. 1998)).  None of the factors are outcome dispositive, but "it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct."  *Id.* (citing *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)).

4

Even though "pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Examples of violated "straightforward procedural requirements" precipitating a Rule 41(b) dismissal of a *pro se* case include a failure to conduct discovery by established deadlines, *id*. at 108, an absence of docket activity besides requests for continuances, *Vesely v. Cuyahoga Metro. Hous. Auth.*, 130 F.R.D. 83, 84 (N.D. Ohio 1990), and failure to abide by deadlines for pretrial disclosures. *Norton v. Toth*, 886 F.2d 1316 (6th Cir. 1989) (unreported table case).

However, because dismissal is a severe penalty, the "dismissal of pro se lawsuits is justified only when the pro se plaintiff acts deliberately, not when he does so through misunderstanding." *Streeter v. NLRB*, 835 F.2d 879 (6th Cir. 1987) (unreported table case) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)). Nonetheless, a district court is given "substantial discretion" in dismissing cases for failure to prosecute "as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Schafer v. City of Defiance Police Dep't.*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Knoll*, 176 F.3d at 363).

Here, Defendants argue that Mr. Chapa "signaled that he has abandoned his claims" by failing to obtain service on Jailer Carl or requesting a waiver of service and failing to conduct any discovery in the two and a half years between the filing of his Complaint in July 2020 and the filing of Defendants' Motion in December 2022. (*See* Doc. # 39 at 2). In his Response, which is the first substantive pleading Mr. Chapa filed (other

5

than a change of address) in the year-and-a-half between June 2021 and December 2022, Mr. Chapa does not contest his lack of activity in the case. (*See* Doc. # 41). Instead, Mr. Chapa writes that since the filing, he has "been battling a drug and alcohol addiction, [has] completed two 90-day [stints] in an [inpatient] rehab [] at K.C.D.C[,] . . . been in and out of jail; homeless here and there and only God knows what else[.]" (*Id.* at 2). He also writes that the jail only gives two pieces of paper per week for indigent inmates, and notes that since he filed the suit, the jail has "broke[n] out all sorts of new uniforms, towels, sand[als], [and] linen."[2] (*Id.*). Importantly, Mr. Chapa does not dispute that he completely failed to comply with the Court's Scheduling Order, which provided that discovery should end by September 2, 2022, and that dispositive motions should be filed by January 13, 2023. (Doc. # 37). Considering these arguments within the four factors provided by the Sixth Circuit in *Knoll*, the Court concludes that Defendants' Motion to Dismiss (Doc. # 39) will be **granted**, because the first three factors weigh in favor of dismissal, and the fourth is neutral.

The first *Knoll* factor, whether the party's failure is due to willfulness, bad faith, or fault, "can be inferred where a party 'display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.'" *Cornett v. Dobson*, 338 F.R.D. 97, 99 (E.D. Ky. 2021) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (alterations in original). While Mr. Chapa has not

---

[2]     Within his Motion for Leave to Amend the Complaint (Doc. # 42), Mr. Chapa also seeks to assert "additional counter response[s]" to the Motion to Dismiss, but the Court does not consider these arguments, since they were filed out of time, and Mr. Chapa did not seek leave to file a sur-reply. L.R. 7.1(g) ("A motion is submitted to the Court for decision . . . after the reply is filed, or the time for filing the response or reply has expired.");  *see also e.g.*, *Chenault v. Randstad USA Mfg. and Logistics*, No. 5:18-CV-276-KKC, 2019 WL 1279211, at *3 (E.D. Ky. May 20, 2019) ("Neither the Local Rules nor the Federal Rules of Civil Procedure permit litigants to file sur-replies.  Accordingly, such filings are not permitted absent leave of Court.") (collecting cases).

displayed an intent to thwart this proceeding, he has conveyed a reckless disregard for the effect of his conduct on the Court and opposing parties.  As of the date of entry of this Order, Mr. Chapa's case has been filed for nearly three years.  The first documented effort by Mr. Chapa to conduct discovery in those three years is a letter dated March 4, 2023, in which Mr. Chapa writes to Assistant Kenton County Attorney Christopher Nordloh that he "made a request for discovery pursuant to the applicable Fed. Civ. R. P. [sic] over a week or so more ago."  (Doc. # 48).  Mr. Chapa himself filed this letter into the record, seemingly in support of his response to Defendants' Motion to Dismiss.  (*Id.*).  But the letter does little more than show that Mr. Chapa did not engage in discovery until March 2023, when the Court's Scheduling Order, entered a full year previously in March 2022, set a deadline for fact discovery of September 2, 2022.  (Doc. # 37).  In other words, Mr. Chapa did not engage in discovery until six months after the deadline for fact discovery ended, and otherwise disregarded deadlines in the Scheduling Order for a full year.  Mr. Chapa did not move the Court for leave to extend any of these deadlines, and the Court knows that Mr. Chapa is aware of his ability to extend deadlines, as he has requested extensions of Court-imposed deadlines before.  (*E.g.*, Doc. # 12, Motion for Extension of Time).

As justification for his absence, Mr. Chapa only states that he has been in complicated living situations and dealing with drug and alcohol dependence issues.  (Doc. # 41).  More importantly, though, Mr. Chapa has not addressed the effect of his conduct on the proceedings, which demonstrates a reckless disregard for his understanding of

how a multiple-year delay in litigation can backlog the Court and affect opposing parties.[3] *Cornett*, 338 F.R.D. at 99.   While the Court is certainly sympathetic to Mr. Chapa's situation, the Court must manage its docket and avoid burdens on the Judiciary and on the parties.   *Schafer*, 529 F.3d at 736.   The first *Knoll* factor thus weighs in favor of dismissal.

The second factor is whether the adversary was prejudiced by the dismissed party's conduct.   *Knoll*, 176 F.3d at 363.   More specifically, "a defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is required to waste time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide."   *Johnson v. Miller*, 363 F. Supp. 3d 806, 810 (E.D. Ky. 2019) (citing *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013)).   Here, as previously stated, Mr. Chapa failed to conduct any discovery until more than six months after the discovery deadline ended.   (*See* Doc. # 37).   Only at that point, almost two years after filing, and after Defendants filed a Motion to Dismiss, did Mr. Chapa attempt to engage in discovery, at which time he also attempted to negotiate a settlement.   (Doc. # 43).   And even then, it is unclear how meaningful his efforts were, as Mr. Chapa wrote that discovery "[wouldn't] take long."   *Supra* note 3 (citing Doc. # 37).   Even though little or no evidence within the record exists to show that Defendants expended resources pursuing Mr. Chapa's cooperation, the law strongly favors the expedient disposition of cases.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("[T]he Federal Rules as a whole . . . are designed 'to secure the just, speedy, and

---

[3]   In fact, albeit in his improper sur-reply (*see supra* note 2), Mr. Chapa has written that he "WILL SURVIVE ANY ATTEMPTS OF DISMISSAL . . . and actually, [he] can't wait to proceed to trial once [he] get[s] discovery together which won't take long."   (Doc. # 42 at 5).   This sentence, dated January 17, 2023, alone demonstrates a fatal misunderstanding of deadlines and a reckless disregard for the Court's Scheduling Order, as discovery had ended in January 2023.   (*See* Doc. # 37).

8

inexpensive determination of every action.'" (quoting Fed. R. Civ. P. 1)).  In consideration of how Mr. Chapa's inaction has prevented the "speedy determination" of this action, thereby prejudicing Defendants, the second factor weighs in favor of dismissal.  Fed. R. Civ. P. 1.

The third *Knoll* factor addresses whether the dismissed party was warned that failure to cooperate could lead to dismissal.  176 F.3d at 363.  On this record, Mr. Chapa was warned four times that his failure to properly litigate his case could result in a dismissal, including for failure to prosecute.  (Doc. # 9) ("If [Mr. Chapa] does not file a timely response, the Court may dismiss the case for failure to prosecute."); (Doc. # 11 at 2) ("The Court repeats its admonition that Chapa's failure to file a timely response is grounds for dismissal . . . for failure to prosecute."); (Doc. # 13 at 1) ("Finally, Chapa is cautioned that the Court **will** dismiss his claims . . . for failure to prosecute if he fails to file a timely and substantive response[.]") (emphasis in original); (Doc. # 16 at 3) ("The Court will impose appropriate sanctions – up to and including dismissal of this action[.]").  While none of these warnings were directly prompted by the delays at issue now, Mr. Chapa is and has been well aware that dismissal for lack of prosecution is a penalty that the Court is empowered to consider and implement.

In addition to the warnings contained within this record, Mr. Chapa is a historically frequent litigant before the Eastern District of Kentucky, as he has been subject to the "three strikes" bar of 28 U.S.C. § 1915(g) for twenty years.  (Doc. # 9); *see also Chapa v. Jailer, Kenton County Detention Center*, No. 2:20-CV-112-GFVT (E.D. Ky. 2020), at ECF No. 4 (outlining Chapa's history of litigation within the Eastern District of Kentucky).  In other words, the Court's warnings in this case and in prior cases have put Mr. Chapa on

sufficient notice that his failure to cooperate with established deadlines and rules of procedure would lead to dismissal of his case, and the third factor thus weighs in favor of dismissal. *Cf. Schafer*, 529 F.3d at 737; *Carthon v. Cent. State Univ.*, 290 F.R.D. 83, 87 (S.D. Ohio 2013).

The fourth factor is whether less drastic sanctions were imposed or considered before dismissal was ordered. *Knoll*, 176 F.3d at 363. Within this action, the Court did not impose less drastic sanctions on Mr. Chapa, but this Court has previously imposed sanctions on Mr. Chapa due to his history of contumacious conduct in other actions. (*See* Doc. # 9). Those sanctions still stand, and Mr. Chapa was only permitted to litigate this case because he filed it in state court, and it was removed here by one of the Defendants. (*See id.*). However, because the Court did not impose a less drastic sanction on Mr. Chapa in this specific action, the Court will assess the final factor as neutral.

The first three factors weigh in favor of dismissal, and the fourth is neutral, meaning that under *Knoll*'s analysis of Rule 41(b), dismissal of this action for failure to prosecute is warranted. More importantly, the filings (and lack thereof) show "a clear record of delay or contumacious conduct" by Mr. Chapa, which means this action is "properly dismissed." *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176 F.3d at 363).

### B.   Failure to State a Claim

As an alternative basis, Mr. Chapa's Complaint is also subject to dismissal for failure to state a claim upon which relief can be granted. Even though Defendants did not raise Rule 12(b)(6) in their Motion to Dismiss, 42 U.S.C. § 1997e(c)(1) (the Prison Litigation Reform Act, hereinafter "PLRA") provides that "[t]he court shall on its own motion . . . dismiss any action brought with respect to prison conditions . . . if the court is

satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted[.]"  Unlike the "three strikes" bar of 28 U.S.C. § 1915(g), another provision of the PLRA, 42 U.S.C. § 1997(e)(c)(1)'s dismissal power applies in full force to cases like this one: § 1983 actions filed in state court which invoke federal law and are later removed to federal court under federal question jurisdiction.[4]  *See, e.g.*, *Hodge v. Louisville/Jefferson Cnty. Metro Jail*, No. 3:05-CV-P831-S, 2006 WL 1984723, at *4 (W.D. Ky. July 12, 2006) (discussing § 1997e(a)'s usage of "no action," making it applicable to § 1983 actions filed in state court) (internal citations omitted);  *Taylor v. Woods*, No. 2:17-CV-85, 2017 WL 5380897, at *2-3 (W.D. Mich. Nov. 14, 2017) (applying § 1997e(c)(1)'s dismissal power for failure to state a claim to § 1983 action filed in state court);  *but see Maldonado v. Baker Cnty. Sheriff's Office*, 23 F. 4th 1299, 1304 (11th Cir. 2022) ("Indeed, § 1997e(e) does not apply to prisoner lawsuits *unrelated to prison conditions* filed in state court based *solely on state law* and removed . . . on diversity jurisdiction.'" (quoting *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317 (11th Cir. 2002) (emphasis added).

When the Court evaluates a *pro se* complaint under the PLRA, it uses the same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See Taylor*, 2017 WL 5380897, at *2; *see also Flanory v. Bonn*, 604 F.3d 249, 252-53 (6th Cir. 2010).  In evaluating a 12(b)(6) motion to dismiss, a court is called to assess whether the plaintiff has "state[d] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

---

[4]    As the Magistrate Judge discussed in his Report and Recommendation, Mr. Chapa's claims are properly construed as being brought under 42 U.S.C. § 1983, as Mr. Chapa's Complaint asserts that his Constitutional rights have been violated by the aggrieved conduct. (*See* Doc. # 33 at 5-6) (citing Doc. # 1-1).

*v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added).  In making that assessment, a court should accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, "if the plaintiff[] do[es] 'not nudge [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.'"  *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc), (quoting *Twombly*, 550 U.S. at 570), *cert. denied*, 572 U.S. 1100 (2014).

To give rise to plausibility, the complaint must contain factual allegations that speak to all a claim's material elements "under some viable legal theory."  *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  In short, a claim cannot pass muster if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim.  *See id.*  The plaintiff's burden in doing so is not onerous, though, as a court should "construe the complaint in the light most favorable to the plaintiff."  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).  That burden with respect to a *pro se* plaintiff is slightly even lower, as "the arguments and filings of *pro se* litigants should be liberally construed."  *Lamb v. Howe*, 677 F. App'x 204, 207 (6th Cir. 2017) (citing *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008)). Nonetheless, however, "mere conclusory statements[] do not suffice," and legal conclusions "must be supported by factual allegations."  *Ashcroft*, 556 U.S. at 678. Accordingly, the "Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure[.]"  (Doc. # 33 at 6 n.2) (citing *Swerkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

As previously stated, Mr. Chapa's Complaint is liberally construed to state claims for relief under 42 U.S.C. § 1983 for alleged violations of his Constitutional rights.  *See supra* note 4; (Doc. # 33 at 5-6).  More specifically, Mr. Chapa has alleged that KCDC's acts and omissions during the COVID-19 pandemic violated his Eighth Amendment rights to be free from cruel and unusual punishment and his Fourteenth Amendment rights to due process of law.  (*See* Doc. # 1-1 at 15-16).  Even under the liberal pleading standard afforded to *pro se* litigants, Mr. Chapa fails to state cognizable claims for relief, and his Complaint will be dismissed for the following reasons.

The Eighth Amendment protects against "cruel and unusual punishments."  U.S. Const. amend. VIII.  In the context of modern incarceration, the Eighth Amendment requires "that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  However, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Rather, the Eighth Amendment is violated when prison officials exhibit "deliberate indifference" to a "substantial risk of serious harm" stemming from conditions of confinement.  *Farmer*, 511 U.S. at 828.

The Fourteenth Amendment is used similarly to litigate conditions of confinement, but it is usually used to extend the Eighth Amendment's protections to pretrial detainees, as pretrial detainees are not "punished' for Eighth Amendment purposes.  *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 358-59 (6th Cir. 2016) (collecting cases) (explaining applicability of Eighth and Fourteenth Amendment to types of conditions-of-confinement cases).

Even so, when a conditions-of-confinement claim is brought by an incarcerated person serving a criminal sentence (as opposed to a pretrial detainee), the Constitutional standards for evaluating the conditions of confinement are the same, irrespective of which amendment the plaintiff styles his claim under.  *E.g.*, *Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 659 (6th Cir. 2021).  In other words, claims brought by incarcerated prisoners under the Eighth and Fourteenth Amendments "are analyzed under the same rubric" – the deliberate indifference standard.[5]  *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 569 (6th Cir. 2013); *see also Cameron v. Bouchard*, 815 F. App'x 978, 984 (6th Cir. 2020) (addressing a claim brought under the Eighth and Fourteenth Amendments and noting only that "[c]onditions-of-confinement claims are assessed under the 'deliberate indifference' framework." (citing *Villegas*, 709 F.3d at 568)).  Accordingly, Mr. Chapa's claims, brought under both the Eighth and Fourteenth Amendments, can be analyzed together as one cohesive Eighth Amendment claim.  *Cf. Villegas*, 709 F.3d at 569.

As previously stated, the Eighth Amendment is violated when prison officials act with "deliberate indifference to a substantial risk of serious harm to an inmate[.]"  *Farmer*, 511 U.S. at 828 (internal quotations omitted).  The test for deliberate indifference "includes both an objective and subjective prong."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Farmer*, 511 U.S. at 834).  An inmate must satisfy both prongs to

---

[5]     Even though the Sixth Circuit has recently adopted a modified deliberate indifference standard for pretrial detainees, the analysis remains the same for incarcerated prisoners. *Westmoreland v. Butler Cnty*, 29 F.4th 721, 727 (6th Cir. 2022); *see also Brown v. Clark*, No. 3:22-CV-21-BJB, 2022 WL 3355805, at *3 (W.D. Ky. Aug. 12, 2022) (noting the new standard for Fourteenth Amendment claims brought by pretrial detainees but remarking that the "difference, however, should rarely matter in the Covid context: what prison official has been hiding under a rock since March 2020 and remains unaware of the risks Covid poses to prisoners?" (citing *Cameron v. Bouchard*, 815 F. App'x 978, 984-85 (6th Cir. 2020)).

14

successfully state a deliberate indifference claim. *See id*. The first prong requires a substantial (objective) risk of serious harm, and the second prong requires the prison official's (subjective) knowledge and disregard of the substantial risk. *Brown v. Clark*, No. 3:22-CV-21-BJB, 2022 WL 3355805, at *2 (W.D. Ky. Aug. 12, 2022) (citing *Farmer*, 511 U.S. at 835). Usually, the subjective prong is most important, as deliberate indifference "entails something more than mere negligence. Instead, the Eighth Amendment standard is akin to criminal recklessness, requiring actual awareness [and disregard] of the substantial risk." *Id*. (internal quotations omitted).

On this record, the subjective prong is indeed the most important, as no reasonable prison official could state that he was unaware of the COVID-19 pandemic and its objectively substantial risk of serious harm. *Cf. id*. at *3 (noting that "the risks Covid poses to prisoners" are well known, and "[i]nstead, the analysis turns on whether the officials responded to that risk in an objectively reasonable manner."); *see also Wilson*, 961 F.3d at 840. Accordingly, to state a claim upon which relief can be granted, Mr. Chapa's Complaint, construed as true, must plausibly show that Defendants "disregarded or responded unreasonably" to the COVID-19 pandemic and associated risks of infection with "a sufficiently culpable state of mind." *Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)); *Trozzi v. Lake Cnty.*, 29 F.4th 745, 752 (6th Cir. 2022) (citing *Farmer*, 511 U.S. at 834). Mr. Chapa has not done so, and a look at analogous case law from the Sixth Circuit illuminates that his Complaint must be dismissed.

Albeit in an unpublished decision, the Sixth Circuit recently upheld a similar dismissal to this one in *Dykes-Bey v. Washington*, in which a Michigan inmate failed to

state an Eighth Amendment claim stemming from an alleged lack of COVID-19 precautions.  No. 21-1260, 2021 WL 7540173 (6th Cir. Oct. 14, 2021).  In *Dykes-Bey*, the plaintiff made allegations almost identical to Mr. Chapa's: that he did not receive adequate quantities of soap, sanitizer, and other hygiene products; that facilities were not adequately cleaned; and that he was not appropriately socially distanced from other inmates.  *Id.* at *1, 3.  The district court dismissed his complaint *sua sponte* under the PLRA, and the Sixth Circuit upheld that dismissal, writing that the inmate plaintiff had not satisfied the subjective prong of the deliberate indifference test.  *Id.* at *3.  The *Dykes-Bey* plaintiff complained that the prison's COVID-19 precautions were inadequate, but not nonexistent, and the plaintiff pleaded no facts which could demonstrate a culpable state of mind by the defendants – which is a "key inquiry" in deliberate indifference cases.  *Id.* As the court explained: "[a]lthough he argues that those steps would ultimately be insufficient to stop an outbreak, whether these steps were sufficient matters less than what they say about the defendants' states of mind."  *Id.* (citing *Wilson*, 961 F.3d at 841).

Mr. Chapa's Complaint fails for the same reasons as the *Dykes-Bey* plaintiff's: while he has complained of conditions that may have been inadequate to fully stop the spread of COVID-19 within the Kenton County Detention Center, he has provided no facts which show "a subjective 'state of mind more blameworthy than negligence,' akin to criminal recklessness.'"  *Cameron*, 815 F. App'x at 984 (quoting *Farmer*, 511 U.S. at 835).  Instead, even construed in a light most favorable to Mr. Chapa, his Complaint shows that Kenton County officials took precautions against COVID-19.  At paragraphs 1 through 6, Mr. Chapa details testing, quarantine, and social distancing precautions undertaken by the jail, writing that his dormitory was tested, and that approximately 23 inmates were

removed from the dormitory after testing positive for COVID-19.  (Doc. # 1-1 at 11-12, 14).  At paragraphs 8A, 8B, and 8C, Mr. Chapa describes antibacterial soap dispensers and germicidal chemicals that are present within the KCDC dormitory.  (*Id.* at 13).  At paragraph 8D, Mr. Chapa writes about KCDC changing inmates' uniforms and bed linens. (*Id.* at 14).  At paragraph 8E, Mr. Chapa provides more details about the jail's social distancing procedures, retelling that 23 inmates were removed from his dormitory after testing positive for COVID-19.  (*Id.*).  To restate the Sixth Circuit's holding in *Dykes-Bey*, "whether these steps were sufficient matters less than what they say about the defendants' states of mind."  2021 WL 7540173, at *3 (citing *Wilson*, 961 F.3d at 841). Standing alone, Mr. Chapa's allegations are insufficient to state a plausible claim for deliberate indifference.

Furthermore, Mr. Chapa's Complaint does not allege that he (or anyone else) contracted COVID-19 because of KCDC's practices – just that he and other inmates were merely exposed to the virus.  (Doc. # 1-1 at 14).  With respect to the social distancing precautions and testing measures undertaken at KCDC, Mr. Chapa does not state what issue he takes with these measures at all, and in that absence, Mr. Chapa's Complaint may even highlight that KCDC's COVID precautions worked well, because Mr. Chapa never contracted COVID.  Even though actual injury isn't a prerequisite for an Eighth Amendment claim, the absence of any cognizable harm certainly suggests an absence of deliberate indifference.  *Cf. Dykes-Bey*, 2021 WL 7540173, at *3 (upholding PLRA dismissal where the complaint did not "allege that the defendants knowingly housed COVID-19 positive inmates alongside any plaintiff, or even that a COVID-19 outbreak occurred[.]"); *Brown*, 2022 WL 3355805, at *5 ("Despite his understandable complaints .

17

. . [plaintiff] doesn't actually allege that he lacks means of protecting himself."). In other words, Mr. Chapa does not allege that the conditions at KCDC were harmful, cruel, or unusual. Mr. Chapa instead merely asserts that KCDC's COVID-19 precautions should have been better or more to his own liking – that the soap dispensers should have been refilled more often, that "most of the time" there were not enough germicidal chemicals, and that he should have received fresh laundry more often than he did. (*Id.* at 13-14).

In Eighth Amendment cases where the Sixth Circuit has determined that incarcerated plaintiffs have stated viable COVID-related conditions-of-confinement claims, the severity of the allegations are stark when contrasted to the allegations made by Mr. Chapa. In *Gordon v. Burt*, the plaintiff alleged that Michigan prison officials consciously disregarded COVID mitigation procedures "by *purposefully* housing him with close-contact prisoners [who had knowingly been exposed to COVID], allowing close-contact prisoners to commingle freely with other prisoners, and not sanitizing areas occupied by close-contact prisoners."[6] No. 21-1832, slip op. at 7 (6th Cir. Aug. 17, 2022) (emphasis added). Mr. Chapa has not alleged any similar facts to suggest that KCDC officials purposefully disregarded COVID mitigation procedures.

Likewise, in *Brooks v. Washington*, the plaintiffs alleged that Michigan officials consciously disregarded COVID mitigation procedures, moving freely between the general population and isolation units, and allowing COVID-positive staff members to work in close proximity to inmates, recklessly exposing them to COVID. No. 21-2639, slip op. at 4-5 (6th Cir. Mar. 30, 2022). The *Brooks* court directly addressed *Dykes-Bey*

---

[6]     "Close-contact" refers to a label that the Michigan Department of Corrections assigned to prisoners who had been in close contact with a prisoner who tested positive for COVID-19 – the label would have been synonymous to COVID exposure-related quarantine for the non-incarcerated public. *Gordon*, No. 21-1832, slip op. at 2 n.1 (explaining the term's meaning).

in a footnote, writing that the *Brooks* plaintiffs' claims were more severe than *Dykes-Bey*, because in *Dykes-Bey*, "the plaintiff . . . conceded that prison officials took precautionary steps to mitigate the threat of COVID-19," and the *Brooks* plaintiffs "made no such concession in their complaint[.]"[7]    *Id*. at 5 n.1.   The Court's analysis of Mr. Chapa's Complaint is analogous to these cases: he has conceded that KCDC officials took precautionary steps to mitigate COVID-19, like *Dykes-Bey*; but he has failed to allege that KCDC officials purposefully exposed him to COVID-19, unlike *Brooks*; and he has failed to allege that KCDC officials deliberately disregarded COVID mitigation protocol, unlike *Gordon*.   *See supra*.   As the Sixth Circuit stated in *Brooks*, these differences are outcome determinative.   No. 21-2639, slip op. at 5 n.1.   With the court having affirmed a dismissal in *Dykes-Bey* and having reversed dismissals in *Brooks* and *Gordon*, it is clear to this Court that its dismissal of Mr. Chapa's COVID-related deliberate indifference claims, which are substantially similar to the claims in *Dykes-Bey*, is sound and supported by case law.

Otherwise, Mr. Chapa complains about prison conditions unrelated to COVID-19 that are likewise insufficient to state an Eighth Amendment claim: that there were only five rolls of toilet paper in his dormitory, and that he received only two hot meals per day. (*Id*. at 15).   These complaints follow a similar theme as Mr. Chapa's COVID-related complaints: that he believed KCDC should have provided more quantities of various items.   Mr. Chapa's Complaint is silent as to how many more soap dispensers, cleaning

---

[7]     In *Gordon* and *Brooks*, the Sixth Circuit also noted that the district court improperly considered materials beyond the complaint, further supporting reversal of the district court's dismissal.   No. 21-1832, slip op. at 4; No. 21-2639, slip op. at 4-5.   The footnote in *Brooks* further distinguished *Dykes-Bey* on that basis.   No. 21-2639, slip op at 5 n.1.   No materials beyond Mr. Chapa's Complaint are being considered here.

chemicals, toilet paper, hot meals, fresh linens, and other amenities he believes KCDC should be providing to inmates.  (*See id*.).  But more importantly, the Eighth Amendment does not require the nation's prisons and jails to supply inmates with as much of anything as the inmate might desire – because the Constitution does not mandate comfortable prisons – only humane ones.  *Farmer*, 511 U.S. at 832.

      **C.**    **Mr. Chapa's Motion for Leave to Amend (Doc. # 42)**

      Lastly, Mr. Chapa has filed a Motion for Leave to Amend (Doc. # 42), seeking to add former Jailer Terry Carl in his individual capacity, to waive service of process on Jailer Carl,[8] to provide notice to the Court that he has sought a settlement from Defendants, and to add arguments in further response to the Motion to Dismiss.  As previously noted, the Court will not consider Mr. Chapa's arguments in response to the Motion to Dismiss because they were filed after the Motion was submitted for consideration.  *Supra* part III.A n.2.  Otherwise, Mr. Chapa's Motion for Leave to Amend will be denied because it is duplicative and futile.

      Mr. Chapa first moved for leave to amend to add Jailer Carl in April 2021.  (Doc. # 19).  The Court granted that motion in March 2022, "to the extent set forth in the [Report and Recommendation] (Doc. # 36), which stated that Mr. Chapa's motion would be granted "insofar as it seeks addition of Jailer Carl individually."  (Doc. # 33 at 7).  But Mr. Chapa never filed an Amended Complaint.  To the extent that Mr. Chapa now seeks

---

[8]    The Court finds it noteworthy that Mr. Chapa has only now moved to seek a waiver of service with respect to Jailer Carl after Defendants raised Mr. Chapa's lack of doing so in their Motion to Dismiss.  (*See* Doc. # 39 at 2).

further leave to amend his Complaint on the same basis, that motion will be denied as duplicative and untimely.[9]

Otherwise, the Court notes that the Sixth Circuit has "emphasized that the case law in this Circuit manifests 'liberality in allowing amendments to a complaint," especially in the context of *pro se* Eighth Amendment claims. *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (quoting *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018)). However, "leave to amend should be denied if the amendment would be futile." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Here, granting Mr. Chapa's duplicative motion for leave to amend would do nothing to cure the deficiencies previously identified and discussed at length. *Supra* parts III.A, III.B. Mr. Chapa's motion seeks to add no additional facts to his Complaint that would make any of his claims more plausible, and so his motion is futile.

Finally, the Court acknowledges that when *sua sponte* dismissing a *pro se* complaint under 42 U.S.C § 1997e for failure to state a claim,  some courts prefer to grant the plaintiff leave to amend, even when such leave is not requested – or, as in this case, when leave is not requested on such basis. *Brown v. Mautaszak*, 415 F. App'x 608, 615-16 (6th Cir. 2011) (collecting cases). Nonetheless, "[t]here is currently no rule of law in this circuit that requires a district court, *sua sponte*, to give a *pro se* plaintiff leave to amend his complaint absent a request . . . and so generally, a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Id*. (citing *Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986); *see also*

---

[9]     The Court entered a Scheduling Order in March 2022 directing that "any motions to amend or join additional parties" must be filed on or before April 1, 2022. (Doc. # 37). The duplicative motion at issue now was filed in January 2023, further underscoring Mr. Chapa's lack of prosecution. *Supra* part III.A.

*Deryke v. Carson City Corr. Health Care*, No. 22-1792, slip op. at 2 (6th Cir. Mar. 15, 2023) (citing *id.*).   That is because "'[a]lthough a district court may allow a plaintiff to amend his complaint before entering a *sua sponte* dismissal' after screening a complaint under the PLRA, 'it is not required to do so.'" *Deryke*, No. 22-1792, slip op. at 2 (quoting *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) (alterations in original)).   For all the reasons previously stated, in the absence of a request from Mr. Chapa to amend his complaint and plead additional facts, the Court will not prolong this litigation by granting him leave to do so on the Court's own motion.

## IV.   CONCLUSION

The Court recognizes and appreciates that inmates have a right to access the courts to assert their Constitutional rights, and the Court further appreciates that the COVID-19 pandemic caused tough times everywhere – and especially inside our nation's prisons and jails.   However, there are myriad issues on this case's record to show that the claims asserted here are without substantive merit.   Mr. Chapa's Complaint is accordingly subject to dismissal with prejudice for multiple reasons: first, for failure to prosecute; second, for failure to state a claim upon which relief can be granted; and third, because amendment of his complaint would be futile and is further unwarranted.

Accordingly, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss (Doc. # 39) is **GRANTED**;

(2)     Upon the Court's further review of the Complaint, pursuant to 42 U.S.C § 1997e(c)(1), Plaintiff fails to state a claim upon which relief can be granted;

(3)     Plaintiff's Complaint (Doc. # 1-1) is **DISMISSED WITH PREJUDICE**;

(4)     Plaintiff's Motion for Leave to Amend (Doc. # 42) is **DENIED**; and

(5)      A corresponding Judgment is entered contemporaneously herewith.

This 14th day of July, 2023.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\Cov2021\21-22 MOO re MTD.docx